UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

GARFIELD WINSTON PEART,
a/k/a "David Small,"
a/k/a "Micheal Williams,"
a/k/a "Michael Anthony Williams,"
a/k/a "Michael Williams,"

                    Defendant.

------------------------------------X

10 Cr. 874-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On September 27, 2010, Garfield Winston Peart, a/k/a "David Small," a/k/a "Micheal Williams," a/k/a "Michael Anthony Williams," a/k/a "Michael Williams," ("Peart" or "Defendant") pleaded guilty to one count of unlawful use of a Social Security number assigned to another person to apply for a New York state identification card under that person's identity, in violation of 42 U.S.C. § 408(a)(7)(B), and one count of unlawful submission of an application for a United States passport containing false information, including a false name and a false Social Security number, in violation of 18 U.S.C. § 1542. For the reasons set forth below, Peart will be sentenced to 12

1

months and 1 day of imprisonment to be followed by 3 years' supervised release. Peart will also be required to pay a special assessment of $200.

**Prior Proceedings**

On September 27, 2010, Information 10 CR 874 (RWS) was filed in the Southern District of New York. Count One charges that on March 3, 2008, in the Southern District of New York, Peart unlawfully used a Social Security number assigned to another person to apply for a New York state identification card under that person's identity, in violation of 42 U.S.C. § 408(a)(7)(B). Count Two charges that on June 15, 2009, in the Southern District of New York, Peart unlawfully submitted an application for a United States passport containing false information, including a false name and a false Social Security number, in violation of 18 U.S.C. § 1542

On September 27, 2010, Peart appeared before the Honorable Henry B. Pittman in the Southern District of New York and allocuted to his criminal conduct pursuant to a written plea agreement.

Peart's sentencing is currently scheduled for December 7, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

    (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)  the need for the sentence imposed —

        (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)  to afford adequate deterrence to criminal conduct;

        (C)  to protect the public from further crimes of the defendant; and

        (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)  the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for —
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

4

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Peart's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

An investigation conducted by various law enforcement agencies revealed that Wilch Dewalt ("Dewalt") acted as a broker who, in exchange for a fee ranging from several thousand dollars to as much as ten thousand dollars, helped his customers obtain New York state identification documents from the Department of Motor Vehicles ("DMV") in other people's identities. To carry out the scheme, after Dewalt obtained a stolen identity, he paid a DMV employee who worked in the Harlem DMV office to verify whether the DMV has already issued an identification document in that identity. Dewalt then obtained various documents in that identity (including a birth certificate, Social Security card,

phony employee identification card, W-2s, pay stubs, and a supermarket card) for the customer to submit along with an application for a New York state driver's license, permit, or identification card. Dewalt took his customers to the DMC office in Yonkers, New York, where a DMV employee and criminal confederate of Dewalt's processed the fraudulent application in exchange for payment from Dewalt.

Robin Jones-Woodson ("Jones-Woodson") was a Motor Vehicle Representative, Grade 9, at the Yonkers DMV; although Jones-Woodson did not routinely process DMV applications as part of her job responsibilities, Jones-Woodson processed many of the fraudulent DMV applications submitted by Dewalt's customers. The initials "RJW" appear on many of the DMV applications submitted by Dewalt's customers, indicating that Jones-Woodson took part in processing the applications.

A special agent with the Bureau of Immigration and Customs Enforcement ("ICE") reviewed a March 3, 2008 application for a New York state identification card, submitted by an applicant, Peart, in the name of an individual (the "Victim") to the DMV in Yonkers, New York (the "DMV Application"). The DMV Application included the Social Security number assigned to the

6

Victim, which purported to be the applicant's Social Security number.

The initials "RJW" appear on the paperwork relating to the DMV Application, indicating that Jones-Woodson was involved in processing the DMV Application. The special agent compared the handwriting on the DMV Application with handwriting belonging to Dewalt, and believed that Dewalt filled out the DMV Application on behalf of Peart. In addition, the special agent searched a commercial database, which associated the Victim's name with an address where Dewalt resided. According to the database, the Victim's name is one of more than 150 names associated with that Dewalt address between 2004 and 2009.

On January 24, 2009, an individual identifying himself as the Victim was ticketed for speeding in Tyre, New York. This individual presented as identification a New York state license bearing the number #XXXXX8867, which is the number assigned to the New York state identification card sought by Peart (the "Applicant Card Number").

The special agent reviewed a June 15, 2009 application for a United States passport, submitted in the name of the

Victim to a United States Post Office in New York, New York (the "Passport Application"). The Social Security number used on the Passport Application is the same as the Social Security number used by Peart on the DMV Application. One of the identifying documents presented in support of the Passport Application was the New York state license bearing the Applicant Card Number. The special agent compared a photograph taken of the person who applied for the United States passport (the "Passport Photograph") with a photograph taken of Peart as part of the DMV Application (the "DMV Photograph"), and believed that both photographs depicted the same person.

The special agent reviewed an ICE interview memorandum, which summarized a November 19, 2009 interview conducted by ICE agents in Skokie, Illinois. The individual interviewed: (a) identified himself as the Victim and provided the agents with a birth certificate, an Illinois state identification card, and a Social Security card, which bore the Social Security number that was used on the DMV Application and the Passport Application; (b) stated that he had never obtained a state issued driver's license and that he had never applied for a United States passport; and (c) stated that approximately one to two years earlier, he had lost his birth certificate,

Social Security card, and state identification card. The special agent compared a photograph taken of the individual interviewed on November 19, 2009 with the DMV photograph, and believed that the photographs depicted different people.

According to ICE records, Peart is a Jamaican citizen who was previously removed from the United States. The special agent compared an ICE photograph taken of Peart (the "ICE Photograph") to the DMV Photograph, and believed that both photographs depicted the same person. The special agent determined that Peart was the applicant who was purporting to be the Victim and who falsely used the Victim's Social Security number. The special agent also compared the ICE Photograph of Peart to the Passport Photograph, and believed that both photographs depicted the same person.

Additionally, car rental records show that the individual ticketed for speeding on January 24, 2009, who identified himself using the New York state license bearing the Applicant Card Number, was driving a car rented by a woman (the "Renter") who gave the rental agency an address in Buffalo, New York (the "Rental Address").

Arrest records of Peart indicated that Peart gave the Rental Address as his place of residence when he was arrested on May 23, 2005. Further, ICE records of Peart show that Renter is the mother of a child fathered by Peart.

As a result of the above-detailed investigation, Peart was arrested on June 18, 2010.

**The Relevant Statutory Provisions**

Pursuant to 42 U.S.C. § 408, the maximum term of imprisonment on Count One is five years. Pursuant to 18 U.S.C. § 1542, the maximum term of imprisonment on Count Two is 10 years.

If a sentence of imprisonment is imposed, the Court may impose a term of supervised release of no more than three years on each count, pursuant to 18 U.S.C. § 3583(b)(2).

Defendant is eligible for not less than one nor more than five years' by statute, on each count, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine that may be imposed is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

**<u>The Guidelines</u>**

The November 1, 2009 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The Guideline for violation of 42 U.S.C. § 408 is found in § 2B1.1, which provides for a base offense level of 6, pursuant to § 2B1.1(a)(2). Pursuant to § 2B1.1(b)(10)(C)(i), an increase in the offense level to 12 is warranted because Defendant engaged in the unauthorized use of a means of identification unlawfully to obtain another means of identification. Specifically, Defendant misused a Social Security number assigned to another person to obtain a New York state identification card. Accordingly, the total offense level for Count One is 12.

11

The Guideline for violation of 18 U.S.C. § 1542 is found in § 2L2.2(a), which provides for a base offense level of 8. Pursuant to § 2L2.2(b)(1), an increase of 2 levels is warranted because Defendant is an unlawful alien who has been deported on one or more occasions prior to the instant offense. Pursuant to § 2L2.2(b)(3), an increase of 4 levels is warranted because Defendant fraudulently obtained a United States passport. Accordingly, the total offense level for Count Two is 14.

Pursuant to § 3D1.2(b), Counts One and Two are combined into a single group because they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. Therefore, pursuant to § 3D1.3(a), the offense level applicable to the group is the highest offense level of the counts in the group, which is 14.

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels.

Accordingly, the applicable offense level is 12.

On March 23, 2005, Peart was arrested and charged with Criminal Possession of Marijuana in the First Degree. On November 18, 2005, he was sentenced in Erie County Court to one year of imprisonment. Pursuant to §§ 4A1.1(b) and 4A1.2(e)(1), this conviction warrants two criminal history points.

A total of two criminal history points establishes a Criminal History Category of II, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 12 and a Criminal History Category of II, the Guidelines range for imprisonment is 12 to 18 months.

The Guidelines range for a term of supervised release is at least two years but not more than three years, pursuant to § 5D1.2(a)(2).

Because the applicable Guidelines range is in Zone C of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5B1.1, Application Note 2.

The fine range for the instant offenses is $3,000 to $30,000, pursuant to § 5E1.2(c)(3). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Upon consideration of all of the relevant factors, it is concluded that the imposition of a Guidelines sentence is warranted.

**The Sentence**

For the instant offenses, Peart will be sentenced to 12 months' and one day's imprisonment and 3 years' supervised release.

Peart is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Peart be supervised by the district of his residence.

As mandatory conditions of his supervised release, Peart shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; and (3) not possess a firearm or destructive device.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that Defendant is able to pay a fine, and so the fine in this case shall be waived. A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for December 7, 2010.

It is so ordered.

New York, NY
December 6, 2010

_____
ROBERT W. SWEET
U.S.D.J.